No. 69,806

STATE OF KANSAS, *Appellee,* v. MEKA R. RICHARDSON, *Appellant.*
(883 P.2d 1107)

Opinion filed October 28, 1994.

*Benjamin C. Wood,* special appellate defender, argued the cause, and *Jessica R. Kunen,* chief appellate defender, was with him on the brief for appellant.

*Nick A. Tomasic,* district attorney, argued the cause, and *Robert T. Stephan,* attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: Meka Richardson appeals from her jury convictions of one count of first-degree murder and one count of aggravated robbery. She was sentenced to life without possibility of parole for 40 years for first-degree murder to run consecutive to the sentence of 15 years to life for aggravated robbery.

On Monday, May 11, 1992, at approximately 5:30 p.m., 22-year-old Brenda Wassink was fatally shot in a shopping center parking lot at 65th Street and State Avenue in Wyandotte County. She was shot in the face at close range. There were a number of people—customers and employees of businesses in the shopping center—who saw the victim and saw a woman running from the scene.

When Bobby Acklin came out of a store at the shopping center, there was a woman lying in the parking lot. His daughter told him that the woman whom they had seen earlier kicking a hubcap shot the woman who was on the ground. The woman who had been kicking on the hubcap was wearing faded blue jeans and a red shirt.

Carol Owens testified that as she came out of a store, she saw a medium-built black girl, and Owens thought the girl was changing a tire on a green car. There was a large black woman and several children in the car. Then the medium-built black girl walked away from the car with what looked like a gun in her hand. She put the gun to the side of a young woman's head, and Owens heard a shot. Owens went back into the store and said that the police should be called. When she came back out, Owens saw the large woman who had been in the green car in the parking lot "hollering and saying, 'Get help.'" The medium-built black girl ran toward 65th Street and across a used car lot. She was wearing a rose-colored blouse and light-colored blue jeans. The green car left before police arrived.

A number of other witnesses testified they saw a small, young black woman wearing a red top running from the scene of the shooting. Her pants were described as jeans or light blue pants. Several of the witnesses testified that the running woman was carrying a purse.

Several witnesses testified that when the victim was lying in the parking lot, she was near a green car. Gloria Pena testified that the green car was driven away before paramedics arrived. Several witnesses in addition to Owens associated a heavyset black woman with the green car. Johnnie Pinks testified that the woman appeared to be upset. Pena testified that the woman was waving

her arms and repeatedly crying out, "I can't believe she shot her." Brad Isabell testified that the woman was holding her face and screaming, "Oh my God, she shot her."

Isabell followed the running woman until he lost her when she crouched down in some bushes behind an apartment complex. Later, as he was driving around in the vicinity, he saw the green car which had been near Wassink.

Kathleen Robben, who lives two blocks east and one block north of the shopping center, testified that about 5:45 p.m. someone drove near their house to warn of a black woman in a red shirt running from a disturbance at the shopping center. Soon, a black woman of small stature, wearing a red shirt and jeans, appeared at the side of the house. The woman, later identified as defendant Richardson, had no purse. She asked for a ride, and then she asked to use the telephone. She had a short telephone conversation, went back outside, sat down by the car, and began crying. She said she could not walk home. Mrs. Robben suggested calling the police, but Richardson wanted to use the telephone again to call her aunt. While Richardson was in the house, Mr. Robben flagged down a passing police car. Mrs. Robben met the police officer at the door and accompanied him into the house where Richardson was talking on the telephone. She had removed her red blouse, thrown it over by the door to the garage, and was talking on the telephone in her jeans and bra.

Mrs. Robben testified that she helped Richardson put her shirt back on, the police officer handcuffed her, and he took her outside. Then Richardson said she was not going to jail for something she did not do, and she said that her sister Kendra and Kendra's boyfriend had been the ones that "made all the trouble." She became extremely excited, kicked, and cried. When the police officer asked Richardson if she knew what had happened at the shopping center, she said, "I didn't do it. I didn't shoot anybody."

Kathryn Allen lived in an apartment in a 12-unit complex near 64th Street and State Avenue. After arriving home from work on May 11, Allen went out the back door of her apartment at approximately 5:00 p.m. to light the grill on her patio. At approximately 5:45 p.m., she went back out to the patio and found a

purse which had not been there before. There was a .38 Special Colt police pistol in the purse. The bullet which was removed from Brenda Wassink's head was .38 caliber. The purse found on Allen's patio was identified as belonging to Wassink.

Two half-sisters of Meka Richardson, Kendra Dean and Latonya Spencer, testified at trial. They earlier had given statements to police and testified at the preliminary hearing. Because their trial testimony differed radically from their earlier accounts, the questioning at trial consisted largely of asking them to recall what they had said before. Dean was 19 at the time of trial and the mother of two children. On the day Brenda Wassink was shot, Dean went riding around in Richardson's green car with Richardson, Spencer, and some children. At the shopping center where Wassink was shot, Richardson was putting hubcaps on the green car. Then Richardson and Dean went into a store. They came out separately. Dean testified that she went for help when she saw the shooting victim on the ground and that she stayed around until a woman with a first-aid kit got to the victim. Dean testified that she drove around in the area looking for Richardson, but she denied encountering Brad Isabell. Spencer, a 14-year-old, testified at trial that she was asleep in the car at the shopping center.

Richardson first argues that the hard-40 sentence was illegally imposed. Richardson was sentenced to life imprisonment without possibility of parole for 40 years. The sentence was imposed pursuant to K.S.A. 1993 Supp. 21-4624(1), which provides:

"If a defendant is charged with murder in the first degree, the county or district attorney shall file written notice if such attorney intends, upon conviction or adjudication of guilt of the defendant, to request a separate sentencing proceeding to determine whether the defendant should be required to serve a mandatory term of imprisonment of 40 years. Such notice shall be filed with the court and served on the defendant or the defendant's attorney at the time of arraignment. If such notice is not filed and served as required by this subsection, the county or district attorney may not request such a sentencing proceeding and the defendant, if convicted of murder in the first degree, shall be sentenced as otherwise provided by law, and no mandatory term of imprisonment shall be imposed hereunder."

Richardson argues that notice in this case is defective in two respects. First, she contends that at the time the 21-4624(1) no-

tice was filed and served, she was not charged with premeditated murder, and since the hard-40 sentence may be imposed only for premeditated murder, she was justified in going to trial in the belief that she was not subject to the hard-40 penalty; and the notice, therefore, was ineffective.

On May 13, 1992, an information was filed charging aggravated robbery in Count II. The charge in Count I stated that on May 11, 1992, in Wyandotte County, Kansas: "Meka R. Richardson did unlawfully and feloniously, in the perpetration or attempt to perpetrate a felony, to wit: Aggravated Robbery, kill a human being, to wit: Brenda Wassink, in violation of K.S.A. 21-3401. (First Degree Murder, 'A' Felony)." Before trial began, the information was orally amended to include premeditated killing as an alternative theory in Count I. A written (second) amended information was filed on August 24, 1992.

Both premeditated killing and felony murder may be charged as first-degree murder under K.S.A. 1993 Supp. 21-3401, which provides in pertinent part:

"Murder in the first degree is the killing of a human being committed:

(a) Intentionally and with premeditation; or

(b) in the commission of, attempt to commit, or flight from an inherently dangerous felony as defined in K.S.A. 1993 Supp. 21-3436 and amendments thereto."

Aggravated robbery is included in the list of inherently dangerous felonies in K.S.A. 1993 Supp. 21-3436. Thus, when the district attorney filed and served notice that he intended to request a separate sentencing proceeding pursuant to 21-4624, Richardson was charged with first-degree murder.

There is a material difference in the wording of subsections (1) and (2) of K.S.A. 1993 Supp. 21-4624. The subject of subsection (1) is the notice which must be given by the prosecutor of intent to request a separate sentencing proceeding. The subject of subsection (2) is the separate sentencing proceeding. Subsection (2) states in pertinent part as follows:

"Except as provided in K.S.A. 1993 Supp. 21-4622 and 21-4623 and amendments thereto, upon conviction or adjudication of guilt of a defendant of murder in the first degree based upon the finding of premeditated murder, the court

upon motion of the county or district attorney, shall conduct a separate sentencing proceeding to determine whether the defendant shall be required to serve a mandatory term of imprisonment of 40 years."

The difference lies in the use of "murder in the first degree" in the first subsection and "murder in the first degree based upon the finding of premeditated murder" in the second.

In this regard, The Honorable Tom Malone wrote in a law journal article that "[t]he Kansas 'hard-forty' law is unclear as to whether it applies to felony murder cases." *The Kansas "Hard-Forty" Law*, 32 Washburn L.J. 147, 160 (1993). He notes the different wording of subsections (1) and (2). 32 Washburn L.J. at 161. He then states:

"The problem is complicated by the fact that the Kansas criminal code does not consider premeditated murder and felony murder as separate offenses. Section 21-3401 of the Kansas Statutes establishes only one offense, murder in the first degree, but it provides alternative theories of proving the crime. Proof that the homicide was committed in the perpetration of a felony is tantamount to premeditation and deliberation which otherwise would be necessary to constitute murder in the first degree [citing *State v. McCowan*, 226 Kan. 752, 602 P.2d 1363 (1979)].

"Although premeditated murder and felony murder are not separate offenses, the 'hard-forty' law, read in its entirety, seems to indicate a legislative intent for the sentence to apply only to premeditated murder and not felony murder. Otherwise, there would be no reason for the specific references to a finding of premeditation. If this conclusion is correct, then it is appropriate for the State to seek the 'hard-forty' sentence in a premeditated murder case but not in a felony murder case." 32 Washburn L.J. at 161.

Richardson does not argue that she was not convicted of premeditated murder. The verdict form shows that the jury found Richardson guilty of murder in the first degree on both the theory of felony murder and the theory of premeditated murder. The district court's journal entry recites that "[o]n the 27th day of August, 1992, the jury found the defendant guilty of the crimes of First Degree Murder (Premeditated), in violation of K.S.A. 21-3401, as charged in Count I and Aggravated Robbery, in violation of K.S.A. 21-3427, as charged in Count II." Richardson does not argue that the evidence was insufficient to support the verdict of guilt of premeditated murder; nor does she expressly argue that it was error for the district court to permit amendment of the

information immediately before trial began. K.S.A. 1993 Supp. 22-3201(e) provides: "The court may permit a complaint or information to be amended at any time before verdict or finding if no additional or different crime is charged and if substantial rights of the defendant are not prejudiced." What Richardson does seem to be arguing is that notice that the prosecutor intends to seek the hard-40 sentence for a defendant who is not charged with an offense for which the hard 40 may be imposed is not notice within the meaning of K.S.A. 1993 Supp. 21-4624(1). We do not agree.

As Judge Malone points out, subsection (1) is not a model of clarity. However, subsection (1) clearly provides for filing of the notice of intent to seek imposition of the hard-40 sentence "[i]f a defendant is charged with murder in the first degree." Therefore, filing the required written notice is proper when a defendant is charged with premeditated or felony murder. The hard-40 sentence may be imposed, however, only when a defendant has been convicted of or adjudicated guilty of premeditated murder.

In *State v. Bailey*, 251 Kan. 156, 169, 834 P.2d 342 (1992), the court stated that '[t]he possible severe consequences to a defendant were not intended to be a last-minute surprise or a matter of conjecture. If faced with a hard-40 prospect, a defendant should be aware of it and be able to plan his or her strategy accordingly." Here, Richardson might reasonably have believed that until the information was amended at the beginning of her trial to include premeditated murder, she was not subject to imposition of the hard-40 sentence. However, it was not unforeseeable, based on the evidence against her, that the State would seek to amend the charges. It is not unreasonable to conclude that Richardson was or should have been aware of the prospect of a hard-40 sentence. Thus, if she disregarded the possibility that the hard-40 sentence might be applied to her, she did so at her own peril.

Second, Richardson contends that the notice is defective because the statutory provision that "notice shall be filed with the court and served on the defendant or the defendant's attorney at the time of arraignment" means at the arraignment. She contends

that, because the notice was filed and served a month before the arraignment, it was not filed and served at the time of arraignment, as required by K.S.A. 1993 Supp. 21-4624(1). She relies on *State v. Deavers*, 252 Kan. 149, 843 P.2d 695 (1992), for the proposition that the statute is mandatory and subject to strict construction. The notice in *Deavers* was filed and served after the arraignment. It was not filed or served until 2 hours and 20 minutes after the arraignment proceeding had been completed, and this court concluded that the statutory requirement had not been satisfied. 252 Kan. at 168. Richardson advocates that the same strict construction should be employed when the notice is filed before arraignment.

The issue of a notice filed and served before arraignment came up but was not an issue which needed to be resolved in *Bailey*. 251 Kan. at 166-69. There, notice of the State's intent to request a separate sentencing proceeding "was attached to the complaint/ information" in the first action filed against Bailey. 251 Kan. at 167-68. Thus, "the defense was aware of said notice prior to the preliminary hearing. The argument made by defense counsel was not surprise or prejudice, rather that the statute was not technically complied with inasmuch as a copy of the notice was not served upon defendants at the *arraignment*." 251 Kan. at 168. The first action filed against Bailey was dismissed shortly after arraignment, and new charges, including the murder charge, were filed the same day as the others were dismissed. A 21-4624(1) notice was served at arraignment on the second set of charges. Bailey argued that the State has one chance and one chance only to invoke the hard-40 penalty by filing and serving notice, and the court rejected the argument. It is in this context that we stated that a defendant should be aware of a hard-40 prospect so as to be in a position to devise his or her strategy. We went on to say: "Notice at the time of arraignment serves this purpose. Under the facts before us, no prejudice has been shown to defendant in any respect and no legislative purpose is shown to have been defeated or impaired." 251 Kan. at 169.

It follows that notice filed and served before the time of arraignment serves the purpose of alerting a defendant to a hard-

40 prospect so that he or she may plan strategy accordingly. And it may be said that no prejudice to a defendant may be shown and no legislative purpose may be shown to have been defeated or impaired by notice filed or served before the time of arraignment. Richardson argues, however, that in *Deavers*, this court held that any deviation from absolute technical compliance with the statutory notice requirements invalidates the notice. Thus, her argument continues, the lack of prejudice to her and lack of defeat of any legislative purpose is immaterial.

Among the basic rules of statutory construction are the following, which were quoted in *Todd v. Kelly*, 251 Kan. 512, 515-16, 837 P.2d 381 (1992):

" 'Interpretation of statutes is a question of law. The function of the court is to interpret the statutes, giving the statutes the effect intended by the legislature.' *State ex rel. Stephan v. Kansas Racing Comm'n*, 246 Kan. 708, 719, 792 P.2d 971 (1990).

" 'As a general rule, statutes are construed to avoid unreasonable results. *Wells v. Anderson*, 8 Kan. App. 2d 431, 659 P.2d 833, *rev. denied* 233 Kan. 1093 (1983). . . .' *City of Olathe v. Board of Zoning Appeals*, 10 Kan. App. 2d 218, 221, 696 P.2d 409 (1985).

" 'A construction of a statute should be avoided which would render the application of a statute impracticable or inconvenient, or which would require the performance of a vain, idle, or futile thing, or attempt to require the performance of an impossible act.' *In re Adoption of Baby Boy L.*, 231 Kan. 199, Syl. ¶ 8, 643 P.2d 168 (1982). See 73 Am. Jur. 2d, Statutes § 251."

This court's rationale in *Deavers*, however, would not require that the notice in the present case be invalidated unless "at the time of arraignment" from 21-4624(1) is construed to mean "at the arraignment." In other words, only if the statute is construed to require that the notice be filed and served at the arraignment proceeding does the rationale in *Deavers* require that Richardson's sentence be vacated. If the statutory requirement is read to mean that the deadline for filing and serving notice is at arraignment, there is no deviation from absolute technical compliance. The construction which Richardson urges this court to place on the notice provisions is hyperliteral. Applying the above rules of statutory construction to K.S.A. 1993 Supp. 21-4624(1) requires that we reject such an interpretation. In the present case, the

serving and filing of the notice prior to arraignment complied with the requirement of 21-4624 that such notice shall be filed and served "at the time of arraignment."

Richardson also complains that at the sentencing proceeding, the State was permitted to introduce irrelevant and prejudicial evidence of her prior involvement in auto theft and use of stolen credit cards. At the sentencing proceeding, defendant's counsel stated that Richardson had been charged with unlawful use of credit cards and given diversion, which she successfully completed. He did not object to the State's showing that Richardson was charged with unlawful use of credit cards, but he objected to any reference to the diversion itself on the ground that it was successfully completed. He also objected to any evidence tending to show that Richardson was involved in the purse snatching which netted the credit cards. The ground for this objection was that she had not been charged with snatching the purse. During the State's presentation of evidence, Richardson's counsel objected on the ground that evidence of "alleged prior criminal activity" is not relevant to the aggravating circumstances designated by the State.

K.S.A. 1993 Supp. 21-4624 provides in pertinent part as follows:

"(3) In the sentencing proceeding, evidence may be presented concerning any matter that the court deems relevant to the question of sentence and shall include matters relating to any of the aggravating circumstances enumerated in K.S.A. 1993 Supp. 21-4625 and amendments thereto and any mitigating circumstances. Any such evidence which the court deems to have probative value may be received regardless of its admissibility under the rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements. Only such evidence of aggravating circumstances as the state has made known to the defendant prior to the sentencing proceeding shall be admissible . . . .

. . . .

"(5) If, by unanimous vote, the jury finds beyond a reasonable doubt that one or more of the aggravating circumstances enumerated in K.S.A. 1993 Supp. 21-4625 and amendments thereto exist and, further, that the existence of such aggravating circumstances is not outweighed by any mitigating circumstances which are found to exist, the defendant shall be sentenced pursuant to K.S.A. 1993 Supp. 21-4628 and amendments thereto . . . ."

K.S.A. 1993 Supp. 21-4625 lists eight aggravating circumstances. In the present case, the State presented the following three of those eight aggravating circumstances to the jury:

"(2) The defendant knowingly or purposely killed or created a great risk of death to more than one person.

"(3) The defendant committed the crime for the defendant's self or another for the purpose of receiving money or any other thing of monetary value.

. . . .

"(6) The defendant committed the crime in an especially heinous, atrocious or cruel manner."

Richardson's contention that evidence of her prior criminal activity is not relevant to any of the aggravating circumstances appears in part to be accurate. However, the legislature authorized the introduction of a broad spectrum of evidence which "shall include matters relating to any of the aggravating circumstances" but expressly is not limited to matters relating to those circumstances. K.S.A. 1993 Supp. 21-4624(3). In fact, the legislature authorized the introduction of evidence "concerning any matter that the court deems relevant to the question of sentence." K.S.A. 1993 Supp. 21-4624(3). The trial court deemed the evidence of prior criminal activity relevant and properly so as to 21-4625(3).

At the time of the sentencing, the district court judge first announced the sentence for the crime of aggravated robbery. He then noted that the jury recommended Richardson receive the hard-40 penalty for Wassink's murder. He stated:

"Pursuant to 21-4624, I've reviewed the verdict of the jury. That verdict of imposing a mandatory term of imprisonment. I've determined whether or not that sentence is supported by the evidence. In looking at the evidence in this case and looking at the aggravating circumstances that the jury was able to find and in determining the mitigating circumstances, I find that the evidence was there to support their recommendation of the 40-year sentence. I therefore do accept that recommendation and I hereby sentence you pursuant to 21-4628, the hard 40 statute, and 21-4618, what is commonly known as the gun statute. I've looked in my mind for any kind of excuse or any kind of rehabilitation or any kind of consideration that this Court pursuant to case law should give you. I've determined that my sentence is a sentence for you personally and a message to send out to the citizens of our state and county that if you're going to look for this type of involvement and put others in danger and use a weapon and take a life, then your life will not be taken but you must pay the price. It's for

this reason that I'm ordering that these two counts run consecutively to each other."

Richardson objects to the court's using her sentence to send a message. She argues that it is improper because the only matters to be considered are "the needs of the defendant and the matter of public safety, as directly affected by the defendant," and "[w]hile Meka's hard forty may be a 'message to the community,' the Court should not have based its imposition of sentence on her upon this rationale."

Richardson argues that her hard-40 sentence must be vacated because it was based on a factor outside the statutes. Richardson's argument is unsound on several grounds. First, it is clear from the remarks of the sentencing judge that his desire to send a message to the community was the reason that he ordered the terms to run consecutively rather than the reason that he imposed the hard-40 sentence. Second, although K.S.A. 1993 Supp. 21-4624(3) provides that other relevant matters may be presented and that the aggravating circumstances must be considered, K.S.A. 1993 Supp. 21-4624(5) expressly states that aggravating circumstances, if not outweighed by any mitigating circumstances, are controlling. In other words, the jury is required to find that at least one of the aggravating circumstances exists before the hard-40 sentence can be imposed. Here, the jury found that the aggravating circumstance found in K.S.A. 1993 Supp. 21-4625(3) existed, and the court found that there was evidence to support that finding.

Richardson also argues that her hard-40 sentence must be vacated because the conflict between her and her attorney deprived her of her right to effective assistance of counsel during the separate sentencing proceeding. At that proceeding, on September 1, 1992, a record of their conflict was made. Richardson's attorney told the court that their relationship had deteriorated. Given an opportunity to express why she was dissatisfied with her attorney's representation, Richardson said:

"With all the publicity that this case got, I didn't know I could get a change of venue and to have people on the jury who were at the scene of the crime. Half the jury already heard about the case. I didn't know how to select a jury. There's a lot of things."

The district court judge informed Richardson that no jurors were at the scene of the crime at the time of the shooting. He also reminded her that each juror had denied forming an opinion based on pretrial publicity and all said they could be impartial. He asked if she had retained an attorney to represent her, and she said that she had not. The district court judge expressed his opinion that she had been well represented. The prosecuting attorney reminded the court that Richardson's first appointed counsel had been removed due to Richardson's dissatisfaction with him. The court concluded that they would go forward with the sentencing proceeding, and Richardson's counsel was directed to continue representing her. Richardson and her counsel were given some additional time to confer before the proceeding began. On October 1, the district court judge denied Richardson's motion for new trial and motion to permit her counsel to withdraw.

Richardson contends that the district court failed to conduct an adequate inquiry on whether the proceeding should have been postponed. She relies on *State v. Ferguson*, 254 Kan. 62, 864 P.2d 693 (1993). In that case, the following basic principles were stated:

"In *State v. Banks*, 216 Kan. 390, Syl. ¶ 2, 532 P.2d 1058 (1975), the court stated: 'As a general rule whether the dissatisfaction of an indigent accused with his court-appointed counsel warrants discharge of that counsel and appointment of new counsel is for the trial court, in its discretion, to decide.' In *State v. Saeger*, 13 Kan. App. 2d 723, 724, 779 P.2d 37 (1989), where the district court had refused the indigent defendant's request to discharge counsel, the Court of Appeals stated:

'On appeal, our scope of review is limited to whether the trial court abused its discretion. In making that determination, we must decide whether any reasonable person would agree with the trial court's ruling. If we can reach that conclusion, we will not disturb the trial court's decision. *Hoffman v. Haug*, 242 Kan. 867, 873, 752 P.2d 124 (1988).' " 254 Kan. at 69.

In *Ferguson*, the court concluded that the district court's discretion had not been abused when it refused to appoint different counsel even though "the breakdown in communication between Ferguson and counsel was absolute," and it was undisputed that Ferguson did not aid in making her defense. 254 Kan. at 73, 76.

The touchstone of Ferguson's case was that the conflict was of her own making. Moreover, there was no reason to believe that substitute counsel would have fared any better in securing her communication or cooperation. 254 Kan. at 75-76.

The principles stated in *Ferguson* do not include any prescription for what type inquiry should be conducted or how extensive it need be when a defendant and appointed counsel are experiencing conflict. The inadequacy of the district court's inquiry is Richardson's complaint. As summarized earlier, the district court learned from defense counsel that there was a conflict. Then the defendant was given an opportunity to state the sources of her dissatisfaction. The district court judge seemed to find her concerns baseless, and he stated why. What Richardson argues was missing from the inquiry was an assessment of the situation as of the time of the sentencing proceeding and, in particular, whether the conflict had progressed to such an extent that there was such a total lack of communication that an adequate defense was prevented. *Ferguson* is not strong authority for the proposition because the breakdown between Ferguson and her counsel was "absolute." Richardson supplies no other authority, and we are not aware of any. Furthermore, examination of the record of the district court's inquiry in the present case discloses that the court was not uninformed on the relationship between Richardson and her counsel as of the time of the sentencing proceeding and that communication had not broken down entirely. At the conclusion of the conference, the district court judge asked Richardson, "Would you like some additional opportunity to talk to Mr. Jeserich prior to this or are you ready to go on?" Richardson responded, "I would like additional time to talk to Mr. Jeserich." The record reflects that Richardson and her counsel then "retired to a private room to have discussions." Under these circumstances, we find that the trial court did not abuse its discretion in failing to appoint substitute counsel for Richardson.

Richardson next contends that "there is insufficient evidence to 'establish that [Brenda Wassink's] death was an essential prerequisite for financial gain.'" She offers no explanation or source for the quoted phrase.

The State submitted three aggravating circumstances. With regard to those circumstances, the jurors were instructed:

"Aggravating circumstances shall be limited to the following:

"1. The defendant knowingly or purposely killed or created a great risk of death to more than one person.

"2. The defendant committed the crime for the defendant's self or another for the purpose of receiving money or any other thing of monetary value.

"3. The defendant committed the crime in an especially heinous, atrocious or cruel manner."

The jury's verdict was couched in the same terms. The jury found that Richardson "committed the crime for the . . . purpose of receiving money or any other thing of monetary value." The wording of the instruction and the verdict form are identical to the statute, K.S.A. 1993 Supp. 21-4625(3). Thus, it does not appear that there is any requirement that the jury make any finding as to essential prerequisites for financial gain. Instead, the requirement is that the jury find, in the circumstances of the present case, that Richardson shot Wassink for the purpose of receiving her purse and its contents.

Richardson asserts that in *State v. Kingsley*, 252 Kan. 761, 851 P.2d 370 (1993), "this Court suggested that there must be sufficient evidence for a rational factfinder to conclude that there was a plan to kill the victim, ahead of time." In fact, it was Kingsley who advocated "that the murder must be an essential prerequisite to financial gain, such as a murder to obtain life insurance proceeds." 252 Kan. at 788. The court did not decide that question. Instead, it found that, even using the interpretation advocated by Kingsley, a rational factfinder could have found the aggravating circumstance present in Kingsley's killing of his victim. 252 Kan. at 789. Thus, *Kingsley* does not support Richardson's assertion that the killing must be "an essential prerequisite for financial gain." We find no merit in Richardson's contention.

Richardson next challenges the district court's failure to suppress her statements. Before trial, Richardson sought suppression of the statements she made to police officers at the home of Mr. and Mrs. Robben on the ground that she gave the statements without being advised of her constitutional rights against self-in-

crimination. She also sought suppression of a recorded and transcribed statement she gave and signed after being taken to police headquarters on the ground that she was under the influence of alcohol and she was told she could secure her release by giving a statement.

On July 17, 1992, a hearing was conducted on Richardson's motion to suppress. At the conclusion of the evidence, the district court denied the motion. The district court found that there had been no interrogation of Richardson at the time she made the oral statements at the home of Mr. and Mrs. Robben. With respect to the transcribed statement, the district court stated:

"There's nothing to lead me to believe that she didn't understand the words being used or didn't understand what she was there for and there's nothing for me to determine that she was under the influence of any intoxicants or alcohol or anything that would keep her from being able to understand the purpose of her being there and the waiver of her rights."

On appeal, Richardson contends that the district court's ruling was in error and that she is entitled to a new trial. The only argument she makes in her brief relates strictly to the statements she made at the Robbens' house. It also appears from the trial transcript that the transcribed statement was admitted into evidence without objection, and even read to the jury without objection, but it does not seem to be part of the record on appeal. "An appellant has the burden of furnishing a record which affirmatively shows that prejudicial error occurred in the trial court. In the absence of such a record, an appellate court presumes that the action of the trial court was proper." *State v. Milo*, 249 Kan. 15, Syl. ¶ 1, 815 P.2d 519 (1991). For all these reasons, we will restrict our consideration to the statements made by Richardson at the Robbens' house.

This court's standard of review has been stated as follows:

"If the findings of the trial court on a motion to suppress evidence are based upon substantial evidence, this court on review will not substitute its view of the evidence for that of the trial court."

"Substantial evidence is evidence that possesses both relevance and substance and that furnishes a substantial basis of fact from which the issues can reasonably be resolved. Stated in another way, substantial evidence is such legal and relevant evidence as a reasonable person might accept as being sufficient to support a

conclusion." *State v. Grissom*, 251 Kan. 851, Syl. ¶¶ 17, 18, 840 P.2d 1142 (1992).

At the hearing on Richardson's motion to suppress, Officer Toledo testified that he was flagged down as he neared the Robbens' house, that he went in the front door, through the living room, and into the kitchen where a young black woman was talking on the telephone. His testimony continued: "As soon as the young black woman saw me she began to shout and state she didn't do anything, it was her sister and her sister's boyfriend who shot the girl at Wal-Mart and left her to take the blame." Believing he had one of the suspects, Officer Toledo then placed Richardson under arrest. Officer Toledo testified that he never asked her any questions. Officer Brown testified that, when he arrived at the Robbens' house, Officer Toledo had Richardson in custody and was escorting her out of the house. Richardson was screaming that she "didn't do it" and that "Lamont and Kendra did the shooting." Officer Brown told her to sit down; she did, and she continued to scream the same thing. He read *Miranda* rights to Richardson. This evidence is substantial evidence in that it is legal and relevant evidence which a reasonable person might accept as being sufficient to support the conclusion that Richardson's statements were voluntary.

Richardson argues, however, that the court should also look at Officer Toledo's preliminary hearing testimony because it differs from his testimony at the suppression hearing and casts a different light on the circumstances. She argues that she actually was arrested and then questioned and then advised of her rights and that Officer Toledo's preliminary hearing testimony bears her out. At the earlier hearing, Officer Toledo testified that when he entered the Robbens' house, he saw and heard Richardson screaming into the telephone. He stated: "I immediately placed her under arrest, placed her into custody, and she began shouting that she didn't shoot nobody, that it was her sister and her boyfriend who did it."

The sequences described by Officer Toledo at preliminary hearing and at the suppression hearing differ, but that difference is immaterial to the district court's finding that Richardson's state-

ments were made without interrogation. There is substantial evidence to support the district court's conclusion that Richardson's statements were spontaneous. The State brings to the court's attention the following quote from *State v. Mooney*, 10 Kan. App. 2d 477, 480, 702 P.2d 328, *rev. denied* 238 Kan. 879 (1985):

"It is well established that volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by the *Miranda* holding. *Miranda*, 384 U.S. at 478; *State v. Jones*, 222 Kan. 56, 60, 563 P.2d 1021 (1977). Moreover, an accused's statement may be found to be voluntary and spontaneous and, thus, admissible even though it is made after the accused is arrested and in custody. *Rhode Island v. Innis*, 446 U.S. 291, 300-02, 64 L. Ed. 2d 297, 100 S. Ct. 1682 (1980). *State v. Miles*, 213 Kan. 245, 246, 515 P.2d 742 (1973); *State v. Broadus*, 206 Kan. 766, 767-68, 481 P.2d 1006 (1971). Therefore, the fact of an arrest itself is not so coercive as to render a statement involuntary."

Thus, the findings and conclusions of the district court are correct. The trial court did not commit error in denying Richardson's motion to suppress.

Finally, Richardson argues that the district court should have excluded evidence of statements made by a woman who witnessed the shooting. Carol Owens testified that she saw a large woman who had been in the green car in the parking lot "hollering and saying, 'Get help.'" Several witnesses in addition to Owens associated a heavyset black woman with the green car. Johnnie Pinks testified that the woman appeared to be upset. Gloria Pena testified that the woman was waving her arms and repeatedly crying out, "I can't believe she shot her." Brad Isabell testified that the woman was holding her face and screaming, "Oh my God, she shot her."

When Pena testified, defense counsel objected on hearsay grounds. The following exchange occurred at the bench:

"MR. TOMASIC: The person will testify.

"MR. JESERICH: I don't know that. There hasn't been any identification of this woman.

. . . .

"MR. TOMASIC: I didn't know she was going to say that. It's not being offered for the truth of the matter that she shot her. It's being offered as part of the res gestae. The person who made those comments will be called as a witness. She'll testify to that.

"MR. JESERICH: The person he's talking about is Kendra. I don't think she'll testify to that. This amounts to an identification. I've been supplied with the investigative report and that's not in there.

"THE COURT: I didn't hear her say who shot her. I just heard her say she threw her hands up and said, I can't believe she shot her. I'll overrule your objection."

The same objection and ruling were made when Isabell testified.

On appeal, Richardson complains that she was denied her right to confront witnesses against her because Kendra Dean, whom it appears the prosecutor had in mind when he represented to the district court that the woman who made the statements would testify, denied making the statements. In fact, at trial, Dean was not asked specifically about the utterances, but she testified that she did not see the shooting because she was in a store. Thus, Richardson's argument continues, "[T]here was nobody to confront and cross-examine on this purported statement." Richardson relies on *Idaho v. Wright*, 497 U.S. 805, 822, 111 L. Ed. 2d 638, 110 S. Ct. 3139 (1990), for the proposition that "[t]o be admissible despite a confrontation clause problem, 'hearsay evidence used to convict a defendant must possess indicia of reliability by virtue of its inherent trustworthiness, not by reference to other evidence at trial.' "

The State responds with the assertion that "Kendra Dean, the appellant's sister, was called as a witness and she was available for cross-examination on this point." Analysis of this issue is somewhat complicated by an apparent lack of identification in the record of Dean as the declarant. Dean did testify at trial, and it seems reasonable to infer that she is the woman Owens, Pinks, Pena, and Isabell testified about. If she is identified in the record as that woman, we are unable to find it, nor has the State pointed it out. However, Richardson, in her brief, assumes that Dean was the declarant. Richardson's entire briefing of this issue is contained in one paragraph, and in that short space she named Dean three times, including the following: "Statements by co-defendants or alleged accomplices, which Kendra [Dean] nearly was, are inherently unreliable." Her denial of the right of confrontation is based upon Dean's being the declarant.

The State contends that the statements fall within the following exception to the rule that hearsay evidence is excluded: "A statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness." K.S.A. 1993 Supp. 60-460(a). Richardson's argument on this seems to be that because Dean denied making the statements, she should be deemed to be unavailable for cross-examination. Richardson offers no authority. The argument lacks persuasiveness because there can be no guarantees that cross-examination will be fruitful or produce the testimony which defendant seeks. In the present case, it could be argued that Dean's denying the utterances was advantageous to Richardson and what she would want to have elicited on cross-examination. In this case, cross-examination of Dean occupies only one and a half pages of transcript and lacks any mention of the utterances.

The State makes several other arguments as to why the statements are admissible. First, it contends that they are admissible as part of the res gestae. The State characterizes the statements as having been heard and reported by persons who either witnessed the shooting or were on the scene within seconds of its occurring. In *State v. Handley*, 234 Kan. 454, 457, 673 P.2d 1155 (1983), the court stated with regard to an identification card and wallet which the defendant objected to as hearsay:

"[B]y no means clearly established, the evidence was admissible independent of a hearsay objection. We have previously held:

'Acts done or declarations made before, during or after the happening of the principal occurrence may be admissible as part of the res gestae where the acts or declarations are so closely connected with it as to form in reality a part of the occurrence.' *State v. Sherry*, 233 Kan. 920, Syl. ¶ 6, 667 P.2d 367 (1983). Chief Justice Schroeder discussed res gestae declarations in *State v. Rider, Edens & Lemons*, 229 Kan. 394, 625 P.2d 425 (1981), wherein it was stated:

'Unsworn declarations received as part of the res gestae do not depend for their effect on the credibility of the declarant, but derive probative force from their close connection with the occurrence which they accompany and tend to explain. *They are admissible as original evidence*, although it is frequently stated that they are received as an exception to the hearsay rule.' (Emphasis added.) 229 Kan. at 404."

In *Handley*, as in the present case, the defendant raised the issue of the right to confrontation. There, the court stated:

"Appellant had a full opportunity to confront and cross-examine the police officers as to the circumstances surrounding his possession and use of the Caudill wallet. It is well settled that the right of confrontation is satisfied when the defendant has had an opportunity to cross-examine the witness against him. *State v. Thrasher*, 233 Kan. 1016, 666 P.2d 722 (1983)." 234 Kan. at 457.

Second, the State argues that the statements were admissible under K.S.A. 1993 Supp. 60-460(d)(1) or (2) as exceptions to the rule that hearsay evidence is not admissible. K.S.A. 1993 Supp. 60-460(d) provides that "[a] statement which the judge finds was made (1) while the declarant was perceiving the event or condition which the statement narrates, describes or explains, [or] (2) while the declarant was under the stress of a nervous excitement caused by such perception" is an exception to the hearsay rule.

We conclude that the statements were admissible on any one of the grounds argued by the State. They are previous statements made by a person present at trial. They are statements closely connected with the shooting which they accompanied. They are statements made contemporaneously with the shooting. Because the witness testified at the trial, was available for cross-examination, and was cross-examined without reference to the statements, there is no basis for Richardson's assertion of a confrontation clause violation. We find no error in the admission of the statements.

The judgment of the district court is affirmed.