No. 102,895

STATE OF KANSAS, *Appellee*, v. BRANDON S. HULETT, *Appellant.*
(263 P.3d 153)

Opinion filed September 30, 2011.

*Michelle Davis*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Jennifer L. Myers*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Steve Six*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

BEIER, J.: Defendant Brandon Hulett appeals the denial of his presentencing motion to withdraw his guilty plea to felony murder. He argues in this summary calendar case that he was deprived of conflict-free counsel at the hearing on his motion, and he seeks a reversal and a remand for appointment of substitute counsel to represent him at a new hearing on his motion to withdraw.

## FACTUAL AND PROCEDURAL BACKGROUND

Hulett was charged with the first-degree premeditated murder of Lori Reynolds and four counts of aggravated assault. The charges stemmed from an incident at a Kansas City drinking establishment where Reynolds was a bartender. At one point, there was a verbal altercation between Reynolds and Hulett's cousin about a drink the cousin allegedly paid for but did not receive. Hulett's party of four left the bar, went to another location, and then returned to the bar, where Hulett entered with a gun and opened fire. Reynolds was struck by several bullets and died.

Charles Lamb was appointed as Hulett's counsel. Before trial, Hulett filed a pro se motion for substitute counsel. In his motion,

Hulett claimed that Lamb's "attitude and demeanor was extremely negative, leaving the defendant feeling that his crime affected [defense counsel] personally." Hulett also argued that Lamb refused to accept his collect telephone calls or respond to his letters, failed to bring discovery items to the jail for Hulett's viewing, and failed to file motions for the appointment of an investigator and an expert in the field of identification. Hulett further argued that Lamb "repeatedly goaded [him] to plead guilty" and "tried to intimidate and antagonize" him by calling him "stupid and other degrading names and a[t] one point actually cursed defendant."

At the hearing on Hulett's motion for substitute counsel, Lamb denied Hulett's accusations. He told the court he had responded to Hulett's correspondence, had not been personally affected by the crimes for which Hulett was charged, and had not harbored a negative attitude toward Hulett. He also stated that he never accepted collect telephone calls from any clients in jail. With regard to Hulett's complaint that, per Hulett's requests, he should have filed motions for the appointment of an investigator and an expert in the field of identification, Lamb said that he had never received such requests from Hulett and that such motions would not be appropriate in any event. Lamb also told the court that he never intimidated or antagonized Hulett, and he never tried to force him into entering a plea. He advised the court that there had been no substantive plea discussions with the State because Hulett "indicated no willingness to enter in any type of plea agreement." With regard to discovery, Lamb said that he could not give copies of certain documents to Hulett because of prior evidentiary rulings by the district court, but he had tried to read available portions of the documents supplied by the State to Hulett. Further, when Hulett was dissatisfied with that approach, Lamb prepared summaries of evidence to give to him.

The district judge denied the motion after considering the statements of Hulett and Lamb and looking to this court's decisions in *State v. McGee*, 280 Kan. 890, 894, 126 P.3d 1110 (2006) (before substitute counsel appointed, defendant must establish "justifiable dissatisfaction" with current counsel; such dissatisfaction may be demonstrated by conflict of interest, irreconcilable conflict, com-

plete breakdown in communications), and *State v. Crum*, 286 Kan. 145, 158, 184 P.3d 222 (2008) (same). The judge found "no conflict of interest, no irreconcilable conflict, no complete breakdown in communication between the defendant and counsel"; he said that "most, if not all, of [Hulett's] complaints have to do with unreasonable expectations of appointed counsel."

The parties then proceeded to jury trial. Before jury selection began, the State offered a plea bargain: In exchange for Hulett's guilty plea to felony murder, the State would drop the charge of premeditated first-degree murder and the four charges of aggravated assault. Lamb explained the proposed agreement to Hulett and said its acceptance would favorably affect Hulett's parole eligibility date. Hulett declined the plea offer.

On the first day of trial, after the jury was empanelled, counsel delivered their opening statements, and the State put two law enforcement officers on the stand. On the morning of the second day of trial, Hulett decided he wanted to accept the State's plea offer. As a result, the State filed an amended information charging Hulett only with one count of felony murder.

Outside the presence of the jury, Hulett told the court that he had reviewed the plea agreement with both defense counsel and his father. When asked if he had any questions for the court or defense counsel, Hulett answered, "No, Your Honor." Hulett also indicated that he understood the original charges brought against him and that he understood the amended charge of felony murder. He said that Lamb had advised him on the nature of the pending charges and any possible defenses. Hulett affirmed that he understood he had a right to enter a plea of "not guilty" and to go forward with a jury trial in which he could confront witnesses and compel the production of evidence. He said he understood that, if he went to trial and a jury convicted him of criminal charges, he had the right to bring an appeal. Hulett also indicated that he understood the maximum penalty on the felony murder charge would be life imprisonment without the possibility of parole for 20 years. He specifically asked the court to explain the parole eligibility factor, which the court then explained. Hulett denied that anyone had

promised any other sentence or other leniency to coax him into entering a guilty plea.

At that point, the court asked Hulett if Lamb had "done all that anybody could do to counsel and assist you and are you satisfied with the advice and help he's given you?" Hulett answered, "No, Your Honor." Lamb then stepped in and reminded the court of the previous motion for substitute counsel: "Judge, if you'll recall, [Hulett] sought to have me relieved last week and we went through that hearing. He's not pleased and we know that, I can't—and that's one of the reasons I wanted to bring his father into any kind of negotiations."

The district judge inquired further into Hulett's dissatisfaction with Lamb:

"The Court: And this goes back to the motion that you had filed previously, is that correct?

"The Defendant: Yes, Your Honor.

"The Court: Okay. Well, the Court obviously will stand by the same rulings that I've made. But, other than that, any other problems?

"The Defendant: Just the—the reasons that I listed in the motion.

"The Court: I understand that.

"The Defendant: (Nodding head up and down.)

"The Court: But I've ruled against you in that motion.

"The Defendant: Well, then, no, Your Honor."

After this exchange, the district judge proceeded with the remainder of the plea hearing.

The State provided the following factual basis for Hulett's plea, which Hulett agreed was his understanding of what the State's evidence would have been at trial:

"Judge if this were to go to trial, the State believes their evidence would be that on April 19th, 2008, at the Gossip Inn Bar located at 2418 Park Drive in Kansas City, Kansas, Wyandotte County, Lori Reynolds was bartending. At some point in that evening, Brandon Hulett was at the bar along with his cousin Sazsha Reams, Darren Coby, and a friend Kimberly Lewis.

"While at the bar, there was some altercation between Ms. Reams and Ms. Reynolds about some money. A drink was ordered and paid for and it was not given to Ms. Reams. So [a] little verbal altercation ensued. It ended. The parties left the bar. They then went to a location on 76th here in Kansas City, Kansas, Wyandotte County.

"They came back to the bar shortly after. Brandon Hulett entered the bar where he opened fire on the bar[,] placing many patrons in fear of immediate apprehension of immediate bodily harm [*sic*]. During—while shooting in the bar, Lori Reynolds was struck with several bullets and died as a result of those gunshot wounds. Numerous people—numerous witnesses in the bar were able to identify Brandon Hulett as the shooter that evening."

The district judge then found Hulett's plea was made freely, voluntarily, knowingly, and "not out of ignorance, fear, inadvertence or coercion" and accepted the plea.

Approximately 1 month later, before sentencing, Lamb filed a motion to set aside Hulett's plea, stating that he had received a letter from Hulett demanding that he file the motion and indicating that Hulett thought the plea was a "mistake." There was no mention of conflict or dissatisfaction with Lamb.

At the hearing on the plea withdrawal motion, Lamb stated: "In the letter he says that it was a mistake. I don't know any other basis for that other than that, but pursuant to his wish, I did file [the motion to withdraw plea]." Lamb then offered: "I think what we ought to do is let Mr. Hulett explain why he thinks that's justified because I don't know the reasons other than what he said that it was a mistake."

Accordingly, the district judge asked Hulett to explain why the plea should "legally" be withdrawn. Hulett gave the following explanation on the record:

"First of all, after the first hearing I asked to withdraw the plea then. My lawyer said you can't. Bottom line. I asked to speak to you and I asked to speak to my father. He said—he said when he came back, he said that you said I could do neither.

"Second of all, Your Honor, felony murder, there is no evidence to support felony murder and I can—I have that with me in an affidavit and summary that my lawyer gave me. Other than that, I looked it up, I didn't have no knowledge of what the meaning was and I also wasn't—I didn't know that I couldn't file for a new trial if I accepted the plea. So I looked up felony murder and it's a death happened within the commission of a felony. Your Honor, the shooting happened before. The victim was killed before the gun was turned on inside the bar. That's in the evidence and I can show you that right now. There is no evidence to support it and I would simply like to withdraw it.

"I told him then . . . that I didn't want to enter a plea of guilty. I maintained my plea of innocence for nine months I believe and nine days I think. And then

on the second day of trial I took the plea. Your Honor, it made no sense. I did it for the wrong reasons other than—excuse me—legal reasons as far as plea was concerned. I would simply like to withdraw the plea."

The State presented its argument in opposition to Hulett's motion, contending that Hulett failed to show good cause for withdrawing his plea. The State pointed out that Hulett was able to speak to his father and Lamb for "at least an hour" before entering the plea, that Hulett was advised "completely of his rights" pertaining to the plea and his right to a trial, and that the court questioned Hulett at length about his understanding of what he was doing. The State also argued that there was a factual basis to support the conviction.

The district judge denied Hulett's motion to withdraw, finding there was no factual, evidentiary, or legal reason supporting it. The judge further explained:

"Well, I recall this case very clearly. And if I'm not mistaken, we put on the record plea negotiations up to the point before we began the trial. I also recall what the basis of the State's evidence was to support their case. And at that juncture the defendant opted to plead guilty to a reduced charge of felony murder. The defendant was sworn and I went over the plea petition slowly and carefully with the defendant providing him an opportunity to ask questions if he didn't understand something or to have it explained to him if there was a term or anything that he did not understand. When I finished and before I accepted his plea, I asked him if he had any questions for the court or his counsel about anything we talked about up to that point and the defendant said no."

The judge then sentenced Hulett for felony murder, imposing life imprisonment without the possibility of parole for 20 years, in contrast to the hard 25 or hard 50 Hulett might have received if he stood convicted of first-degree premeditated murder.

## DISCUSSION

Hulett argues on this appeal that he was denied his Sixth Amendment right to counsel at his plea withdrawal hearing because Lamb had a conflict of interest. He asserts that his pretrial motion to substitute counsel and his expression of dissatisfaction with Lamb at his plea hearing, when combined with Lamb's "bare bones" motion to withdraw and failure to advocate orally at the plea withdrawal hearing, put the district judge on notice to inquire about a

conflict, despite his failure to mention it. He argues that "[i]mplicit in [his] statements to the court" about not understanding the meaning of the felony-murder charge, about the evidence not supporting the charge, and about his telling Lamb that he did not want to plea "were claims of coercion and incompetency by counsel." Hulett also contends that the first responsibility of the district judge in determining whether he had shown good cause to withdraw his plea was to recognize the "red flag" of Lamb's "apparent conflict of interest." As a result of the district judge's failure to discharge his independent duty to inquire, Lamb argues that he is entitled to reversal of the judge's ruling on his motion to withdraw and a remand for appointment of substitute counsel to represent him at a new hearing on his motion to withdraw.

The State responds to Lamb by arguing that neither Hulett's motion to withdraw plea nor his remarks to the court at the time of the hearing on the motion indicated any continuing dissatisfaction with Lamb's performance. In its view, the district judge had fully dealt with the issues regarding defense counsel and had no reason to infer that they were still in issue and no independent duty to inquire. The State also argues that Hulett has failed to demonstrate how any alleged conflict of interest adversely affected Lamb's performance at the hearing on the motion to withdraw.

Hulett argues that "constitutional considerations" underlying this case warrant de novo appellate review. But it is well established that a district judge's decision on disqualification of counsel for conflict of interest, a refusal to appoint new counsel, and a denial of a defendant's presentencing motion to withdraw plea are all decisions reviewed on appeal under an abuse of discretion standard. *State v. Anderson,* 291 Kan. 849, 855, 249 P.3d 425 (2011) (presentence motion to withdraw plea); *McGee,* 280 Kan. at 894 (disqualification of counsel for conflict of interest); *State v. Toney,* 39 Kan. App. 2d 1036, Syl. ¶¶ 1, 2, 187 P.3d 138 (2008) (disqualification of counsel for conflict of interest and postsentence motion to withdraw plea). In order for a district court decision to receive a full measure of this court's deference under the abuse of discretion standard, it must have been based upon a correct understanding of the law. *State v. White,* 289 Kan. 279, 284-85, 211 P.3d 805

(2009); see *State v. Gonzalez*, 290 Kan. 747, 755-57, 234 P.3d 1 (2010); *State v. Edgar*, 281 Kan. 30, 38, 127 P.3d 986 (2006). The defendant bears the burden of establishing an abuse of discretion. *State v. Schow*, 287 Kan. 529, 541, 197 P.3d 825 (2008).

When a defendant has a constitutional right to counsel, he or she has a corresponding right to representation by counsel that is free from conflicts of interest. *Toney*, 39 Kan. App. 2d at 1040 (citing *Wood v. Georgia*, 450 U.S. 261, 271, 101 S. Ct. 1097, 67 L. Ed. 2d 220 [1981]). Here, because the State was represented at the hearing on Hulett's motion to withdraw plea, Hulett had a constitutional right to conflict-free counsel at the hearing on his motion to withdraw plea. See *State v. Taylor*, 266 Kan. 967, 975, 975 P.2d 1196 (1999) ("[I]f a hearing is held and the State is represented, the defendant should be represented by conflict-free counsel unless the defendant waives the right to counsel."); see also *United States v. Segarra-Rivera*, 473 F.3d 381, 384 (1st Cir. 2007) (discussing general right to counsel at hearings on motions to withdraw plea).

Hulett points to *State v. Vann*, 280 Kan. 782, 127 P.3d 307 (2006), and *Taylor*, 266 Kan. at 967, for the proposition that the district court had an independent duty to inquire further after he raised the potential of a conflict of interest between him and Lamb.

In *Taylor*, the defendant sought to withdraw his *Alford* plea prior to sentencing. One question on appeal was whether the district judge violated the defendant's Sixth Amendment right to counsel by failing to inquire into his dispute with counsel. This court held: "Where a trial court becomes aware of a possible conflict of interest between an attorney and a defendant charged with a felony, the court has a duty to inquire further." *Taylor*, 266 Kan. 967, Syl. ¶ 3. "It is the task of the district judge to insure that a defendant's Sixth Amendment right to counsel is honored." *Taylor*, 266 Kan. 967, Syl. ¶ 5.

The defendant in *Taylor* explicitly alleged problems with his attorney during the hearing on his motion to withdraw plea. We noted:

"The problem here is that the district court never allowed Taylor an opportunity to explain his perception of the alleged conflict before denying the request for new counsel.

. . . .

"The district judge failed to make any inquiry as to the problems between Taylor and [his counsel]. Were they imagined or real? The record contains no inquiry from the bench regarding the adequacy of Taylor's representation." *Taylor*, 266 Kan. at 975.

This court then vacated the defendant's sentence and remanded for another hearing on his motion to withdraw plea. *Taylor*, 266 Kan. at 979-80; see also *United States v. Davis*, 239 F.3d 283, 287 (2d Cir. 2001) (absent knowing waiver, defendant entitled to new, conflict-free counsel to pursue motion to withdraw plea, when particularized allegations made that create actual conflict of interest with defendant's present counsel); *People v. Vaughn*, 200 Ill. App. 3d 765, 558 N.E.2d 479 (1990) (error to fail to provide conflict-free counsel to assist defendant in preparing motion to set aside plea based on ineffective assistance of counsel); but see *State v. Richardson*, 256 Kan. 69, 8182, 883 P.2d 1107 (1994) (district court did not abuse discretion by failing to appoint substitute counsel upon defendant's motion during sentencing phase of trial; defendant given opportunity to explain dissatisfaction; court stated reasons why defendant's concerns baseless; communication between defendant, counsel had not broken down entirely).

*Taylor* is distinct from this case, because the defendant in *Taylor* brought the allegation of a counsel's conflict to the attention of the court at the hearing on the motion to withdraw plea. Hulett did not explicitly do so, and we disagree that an allegation of counsel's "incompetence" was implicit in the things he did say.

In the *Vann* case as well, the district judge failed to inquire after several express allegations of conflict by the defendant; and we ruled that the district judge abused his discretion. See *Vann*, 280 Kan. at 792. Again, Hulett's conduct is markedly distinct from that of the defendant in *Vann*.

This case is much more akin to *State v. Williams*, 290 Kan. 1050, 236 P.3d 512 (2010).

In *Williams*, the defendant sought to withdraw her plea before sentencing. At the time of her plea, the defendant had indicated that she was satisfied with her attorney's performance. When the defendant moved to withdraw her plea, she said only: " 'I don't

believe that taking the plea is the best for me.' " 290 Kan. at 1051. At the hearing on the motion to withdraw the plea, defendant's counsel introduced a letter from defendant in which she stated that " 'it would appear that this was not done with my best interest in mind, rather as a quick resolution for you.' " 290 Kan. at 1051. The district judge then heard directly from the defendant about her reasons for seeking to withdraw her plea and "did not inquire of William's counsel, who did not step forward with any argument." 290 Kan. at 1052. When the defendant addressed the court, she argued that her acts did not support the charge and expressed concern about her right to appeal. The judge responded to both issues. Without addressing the claim in defendant's letter that her lawyer had not acted in her best interest, the district judge denied the motion to withdraw plea.

On appeal, Williams argued that she was not " 'represented by competent counsel' " as one factor constituting good cause for presentencing plea withdrawal under *State v. Edgar*, 281 Kan. 30, 127 P.3d 986 (2006), and *State v. Schow*, 287 Kan. 529, 197 P.3d 825 (2008). This court noted that the district judge had heard directly from the defendant at the motion hearing and that her concerns dealt with the nature of the plea she had entered, not her attorney's performance. "Nothing in [the defendant's] discussion with the judge indicated that she was concerned with the representation provided by her attorney[,] beyond the fact that she had a misunderstanding about what she had pled to." *Williams*, 290 Kan. at 1054-55. We therefore rejected the defendant's argument on ineffective counsel, for which she had cited *Vann* and *Taylor*, holding there was "no error in the district court's failure to address a nonexistent, possible conflict of interest between Williams and her attorney." *Williams*, 290 Kan. at 1056.

As in *Williams*, we hold there is no error here in the district court's "failure to address a nonexistent, possible conflict of interest" between Hulett and Lamb at the time of the hearing on the motion to withdraw plea. The district judge heard directly from Hulett at the plea withdrawal hearing, and Hulett's concerns related to the nature of the plea he had entered, not defense counsel's performance. Hulett did not reassert any problem he may

previously have had with Lamb. There was no reason for the district judge to "become[] aware of a possible conflict of interest" at that point. See *Taylor*, 266 Kan. 967, Syl. ¶ 3.

Furthermore, Hulett's earlier allegations of conflict of interest were resolved appropriately by the district judge and did not linger in the air at the hearing on the motion to withdraw plea. At the hearing on Hulett's pretrial motion to substitute counsel and at the plea acceptance hearing, the district judge addressed Hulett personally and asked several questions about the alleged conflict. At the first of those two hearings, the district judge found no conflict and concluded that "most, if not all, of [Hulett's] complaints have to do with unreasonable expectations of appointed counsel." At the plea acceptance hearing, when Hulett again said he was dissatisfied with Lamb, the district judge specifically inquired about whether there were problems other than those ruled upon in the earlier hearing. Hulett indicated that there were not.

Finally, Hulett argues that Lamb's performance in drafting and orally presenting the motion to withdraw plea should have made the existence of a conflict apparent to the district court. We agree that counsel should ordinarily set out the legal standard applicable to his or her client's motion, but we do not agree that it is always improper to defer to the client's specific description of the reasons a plea should be withdrawn. There are times when only the client can articulate the reasons to the client's satisfaction, especially when the client's original complaint is nothing more than some variety of the vague "I made a mistake." There are also times when there is no legal support for a client's position, and this may have been one of them. Would we nevertheless have liked to have seen a more enthusiastic and expansive performance by counsel here? Yes. Was Lamb's performance so infirm that it was an abuse of discretion for the district judge *not to have sua sponte* inquired about a current conflict of interest? No.

This very situation was before us in *Williams*. In that case, as here, the district judge heard directly from the defendant about her reasons for seeking to withdraw her plea, and defendant's counsel failed to "step forward with any argument." *Williams*, 290 Kan. at 1052. We rejected defendant's argument premised on

*Vann* and *Taylor*, seeing no error in the district judge's failure to address an alleged conflict that it had no reason to believe existed. *Williams*, 290 Kan. at 1056. Implicit in our *Williams* holding was our conclusion that lackluster advocacy does not equate to an obvious conflict that must receive immediate, on-the-record attention from the district court.

In view of all of the foregoing discussion, the judgment of the district court is affirmed.

\* \* \*

LUCKERT, J., dissenting: I respectfully dissent from the majority's conclusion that the district court did not have an obligation to inquire about appointed counsel's potential conflict of interest at the hearing on the motion to withdraw plea.

The majority's heavy reliance on *State v. Williams*, 290 Kan. 1050, 236 P.3d 512 (2010), is misplaced because of a significant distinguishing factor: There is no indication that Williams had previously accused her counsel of being ineffective. In contrast, in this case Brandon Hulett had previously asserted that he had been deprived of conflict-free counsel and that his appointed counsel, Charles Lamb, had failed to effectively represent him. Some of Hulett's complaints related to a breakdown in communication between Hulett and Lamb. With this background in mind, several statements at the hearing on the motion to withdraw plea are particularly noteworthy and, as Hulett aptly states, should have been "red flags" prompting an inquiry from the court.

First, Lamb stated: "In the letter he says that it was a mistake. I don't know any other basis for that other than that, but pursuant to his wish, I did file [the motion to withdraw plea]." Lamb also stated: "I think what we ought to do is let Mr. Hulett explain why he thinks that's justified because I don't know the reasons other than what he said that it was a mistake." Hulett, forced to present his own argument, suggested he should be allowed to withdraw his plea because there was an insufficient factual basis for the plea and he did not understand the rights he was waiving, particularly his right to appeal. Both grounds were legitimate *legal* grounds for seeking to have a plea withdrawn. See K.S.A. 2010 Supp. 22-

3210(a)(3), (4); *Williams*, 290 Kan. at 1053 (basis for plea withdrawal includes grounds that plea was not fairly and understandingly made). Because they were legitimate grounds for seeking to set aside the plea, it seems a short conversation between Lamb and Hulett would have been all that was necessary for Lamb to have been able to represent his client and present any supporting legal arguments. If Lamb disagreed factually, he could have left the factual explanation to his client. The important point, however, is that these circumstances suggest there had been no attempt by Lamb to communicate with his client or that there was such a complete breakdown in their relationship that Hulett had refused communication. Unfortunately, because the district court did not make any inquiry, we do not know whether there had been an attempt to communicate, a breakdown in communication, or absolutely no attempt to learn the reasons.

Second, Hulett began his comments to the district court by stating:

"First of all, after the first hearing I asked to withdraw the plea then. My lawyer said you can't. Bottom line. I asked to speak to you and I asked to speak to my father. He said—he said when he came back, he said that you said I could do neither."

These comments suggest that Lamb took the position immediately after the plea hearing that he would not assist Hulett's efforts to withdraw the plea. Even though Hulett's comments were not phrased in legal terms such as "conflict of interest" or "ineffective assistance of counsel," the statements were an explicit allegation of problems with Hulett's counsel. Further, the comments suggest a deterioration in the relationship between Hulett and Lamb from the time of the hearing on the motion for substitute counsel. The potential for a conflict of interest is not static, and under circumstances where there was new evidence of a breakdown in the attorney-client relationship, it was not appropriate to rest on findings made before trial.

Consequently, I would find that *State v. Vann*, 280 Kan. 782, 127 P.3d 307 (2006), and *State v. Taylor*, 266 Kan. 967, 975 P.2d 1196 (1999), do apply, and under those cases the district court had

a duty to inquire about a possible conflict of interest that prevented Hulett from receiving effective assistance of counsel at the hearing on the motion to withdraw plea and at the plea hearing itself. I would remand for appointment of new counsel and a hearing on the motion to withdraw plea.

JOHNSON, J., joins the foregoing dissenting opinion.