NOT DESIGNATED FOR PUBLICATION

No. 113,907

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MITCHEL WADE HOLMES,
*Appellant*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; DAVID B. DEBENHAM, judge. Opinion filed August 12, 2016. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Chadwick J. Taylor*, district attorney, and *Derek Schmidt*, attorney general, for appellee.


Before SCHROEDER, P.J., GREEN, J., and STUTZMAN, S.J.


*Per Curiam*:  Mitchel Wade Holmes was convicted by a jury of aggravated battery and criminal threat. Holmes now appeals alleging the evidence was insufficient to convict him of aggravated battery in violation of K.S.A. 2015 Supp. 21-5413(b)(1)(C). Our review of the evidence in the light most favorable to the State reflects more than sufficient evidence to convict Holmes of aggravated battery. Holmes failed to brief any challenge to the validity of his criminal threat conviction on appeal, and we affirm that conviction finding he has waived and abandoned the issue. Holmes next claims the district court improperly required him to partially reimburse the State for his court-appointed attorney fees. We find the district court did an extensive analysis in compliance with *State v. Robinson*, 281 Kan. 538, 539, 546, 132 P.3d 934 (2006), of whether to

1

assess Board of Indigent Defense Services (BIDS) fees, and we find no error. We affirm Holmes' convictions for aggravated battery and criminal threat along with the district court's assessment of BIDS fees in the amount of $1,000.

FACTS

Since Holmes attacks the sufficiency of the evidence to convict him of aggravated battery, we will detail the events of July 4, 2014, and the victim's statements in detail.

On July 4, 2014, Holmes and Lindsey Rubottom attended a party at Holmes' mother's house. After the party, Rubottom drove them to her apartment. Holmes began calling Rubottom names, poured a bottle of water on her head, and slapped her in the face with an open hand. Rubottom then decided to drive Holmes home, and they left her apartment. Before they could get into her truck, Holmes took Rubottom's keys and some of her belongings and ran away from her. Holmes threw her keys down a nearby street. Rubottom followed Holmes and found her keys. She began to run toward a nearby bar. Holmes tackled her, and she fell to the ground. Rubottom hit her face on the asphalt when she fell, cutting her upper eyelid. Holmes grabbed her by the hair on the back of her head and slammed her face into the pavement.

Rubottom ended up on her back at which point Holmes put his hands around her neck and began choking her. Holmes told Rubottom, "I'm going to put you to sleep, bitch, I'm going to put you to fucking sleep." Rubottom became light-headed and dizzy as Holmes choked her. Holmes ran away, taking Rubottom's phone. Rubottom got up and ran to Abigail's Bar. Rubottom was assisted by the bar staff who called 911. Rubottom borrowed a phone from one of the bar staff and also called 911 to report the incident.

Multiple officers responded to the call. Rubottom gave a brief statement to Officer Benjamin Heusted at the scene. Rubottom was examined by emergency medical personnel who recommended she seek further evaluation and treatment at the hospital.

2

Rubottom was transported to the hospital by ambulance and was examined by Dr. Howard Rodenberg. Rubottom informed Dr. Rodenberg that her head had been slammed against the asphalt and complained that she had a headache over her entire scalp and head. She also told Dr. Rodenberg she had been choked and lost consciousness and that her hair had been pulled. Dr. Rodenberg noted a small cut on Rubottom's left upper eyelid, some scratch marks on the right lower portion of her neck, diffuse tenderness of her scalp, and a bruise on her right upper arm. Dr. Rodenberg testified that Rubottom's injuries were consistent with the manner in which she described the attack. Dr. Rodenberg further testified that it is possible for serious injury to be caused by seemingly minimal force.

After Dr. Rodenberg examined her, Officer Heusted conducted a more detailed interview of Rubottom at the hospital, recording it on his Axon body camera which was played for the jury at trial. Officer Heusted noted the same injuries as Rodenberg and also observed an abrasion near Rubottom's left elbow as well as swelling on the left side of her face. Officer Heusted took several photographs of Rubottom's injuries which were presented to the jury at trial and testified that Rubottom's injuries were consistent with her description of the attack.

Rubottom offered multiple accounts of the attack in the statements she made following the incident, in her testimony at the preliminary hearing, and at trial. These inconsistencies were thoroughly addressed during cross-examination. When she first spoke to officers at the bar, Rubottom stated Holmes attacked her in her apartment, hitting her, throwing water on her, picking her up by her hair, slamming her into a wall, and dragging her out of her apartment by her hair. At the hospital, Rubottom told Officer Heusted that Holmes attacked her outside her apartment, hitting her in the face with her phone, and pouring water on her. In some of her accounts, Rubottom claimed Holmes tripped her as she ran toward the bar, whereas at trial she claimed she was tackled. Defense counsel also pointed out Rubottom told Officer Heusted that Holmes spit on her and kicked her in the butt; however, she left out this detail when testifying at trial.

3

On redirect examination, Rubottom testified she was confused by defense counsel's questions on cross-examination. She explained she had not had the opportunity to review the statement she made to Officer Heusted or much of her preliminary hearing testimony prior to trial. She also indicated her recollection of what had happened was not as sharp at the time of trial as it was shortly after the incident or at the preliminary hearing. Rubottom testified the events were traumatic and she preferred not to think about them. She stated Holmes had spit on her, but she did not testify about it on direct examination because she was not asked whether he had. Rubottom said she was trying to direct her testimony to the questions she was being asked. Holmes was convicted of aggravated battery and criminal threat.

Sentencing was consolidated with another case, 14CR1947, which Holmes does not appeal. In this case, Holmes was sentenced to 12 months' imprisonment and was granted 24 months' probation. During the sentencing proceedings, the district court determined Holmes needed to partially reimburse BIDS fees for the court-appointed attorney incurred for his benefit. He was ordered to pay $1,000 in BIDS attorney fees, reduced from more than $2,700. The district court discussed Holmes' financial situation at length, inquiring as to his income, expenses, child support obligations, and living situation. Holmes was also asked about his assets, including vehicles he owned, bank account balances, and whether he stood to receive an inheritance from his stepfather who had recently passed away. Holmes' counsel informed the district court Holmes is "young and able-bodied," working approximately 50 hours per week at a salary of $9 per hour. The district court waived all fees in Holmes' other case, 14CR1947. The district court further authorized Holmes to perform community service in lieu of cash payment of the fines and fees imposed.

Holmes timely appeals. In his brief, Holmes only challenges the sufficiency of the evidence to convict him of aggravated battery and whether the district court properly determined he should reimburse BIDS for part of his court-appointed attorney fees.

ANALYSIS

*Holmes' conviction for aggravated battery is supported by sufficient evidence.*

*Standard of Review*

When the sufficiency of the evidence is challenged in a criminal case, the appellate court reviews all the evidence in the light most favorable to the prosecution. The conviction will be upheld if the court is convinced a rational factfinder could have found the defendant guilty beyond a reasonable doubt based on that evidence. *State v. Laborde*, 303 Kan. 1, 6, 360 P.3d 1080 (2015). In determining whether there is sufficient evidence to support a conviction, the appellate court generally will not reweigh the evidence or credibility of witnesses. *State v. Daws*, 303 Kan. 785, 789, 368 P.3d 1074 (2016). It is only in rare cases where the testimony is so incredible that no reasonable factfinder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *State v. Matlock*, 233 Kan. 1, 5-6, 660 P.2d 945 (1983).

*Discussion*

Holmes acknowledges his most significant hurdle to overcome is the victim's testimony about what happened and the injuries she suffered. Holmes further acknowledges testimony by a single eyewitness may support a criminal conviction. Holmes argues, however, that in order to convict him, the jury needed to conclude Rubottom's testimony was "extremely credible." Holmes asserts no rational factfinder could find Rubottom's testimony extremely credible based on the conflicts in her testimony and the physical evidence.

Holmes does not offer any authority supporting his assertion the jury needed to find Rubottom's testimony "extremely credible" in order to convict him. Holmes is asking this court to reweigh the evidence and make credibility determinations, which we cannot

do. See *Daws*, 303 Kan. at 789; *State v. McCaslin*, 291 Kan. 697, 710, 245 P.3d 1030 (2011). Holmes' argument misconstrues the extremely narrow circumstances in which an appellate court may reverse a conviction based on credibility issues with a witness' testimony. It is only in rare cases where the testimony is so incredible that no reasonable factfinder could find guilt beyond a reasonable doubt that a guilty verdict will be reversed. *Matlock*, 233 Kan. at 5-6. However, *Matlock* itself has subsequently been called into question by Kansas appellate courts. See generally *State v. Brinklow*, 288 Kan. 39, 53, 200 P.3d 1255 (2009) (stating *Matlock* is perhaps the only Kansas case in which the Supreme Court directly weighed the evidence and assessed the credibility of a witness to reverse a conviction, calling such review "aberrant").

The record on appeal shows several inconsistencies between Rubottom's testimony and her statements. Rubottom's statements to the 911 operator immediately after the incident, her statements to Officer Heusted at the scene and at the hospital, her statements to Dr. Rodenberg at the hospital, her preliminary hearing, and her trial testimony all differed to varying degrees. These inconsistencies were fleshed out during Rubottom's cross-examination. The jury was free to determine her credibility and decide what weight to give to her testimony. See *State v. Lopez*, 299 Kan. 324, 330, 323 P.3d 1260 (2014) (the procedural mechanism for testing the impact of inconsistencies on a witness' credibility is through cross-examination); *State v. Franco*, 49 Kan. App. 2d 924, 930, 319 P.3d 551 (2014), *rev. denied* 304 Kan. __ (April 29, 2015) (jurors may choose to believe parts of a witness' testimony and disbelieve other parts). Because the inconsistencies in her testimony were explained to the jury, its reliance on her testimony was reasonable. See *State v. Raskie*, 293 Kan. 906, 921, 269 P.3d 1268 (2012).

Despite the inconsistent details, Rubottom's statements and testimony consistently established the necessary elements of the offense. Where a witness' statements and testimony, even if conflicting, are consistent in establishing the necessary elements of the offense, the conviction should not be overturned. See *Raskie*, 293 Kan. at 921. Aggravated battery is defined as "knowingly causing physical contact with another

6

person when done in a rude, insulting or angry manner with a deadly weapon, or in any manner whereby great bodily harm, disfigurement or death can be inflicted." K.S.A. 2015 Supp. 21-5413(b)(1)(C).

Officer Heusted and Dr. Rodenberg both testified that Rubottom's injuries were consistent with the manner in which she described the attack. Although Holmes argues the extent of Rubottom's injuries are minimal compared to what may be expected from her account of the incident, it was clear Rubottom suffered multiple injuries. Dr. Rodenberg also testified serious injury could occur with seemingly minimal force.

There was sufficient evidence from which a rational factfinder could conclude Holmes knowingly caused physical contact with Rubottom in a rude, insulting, or angry manner. There was also sufficient evidence to find great bodily harm, disfigurement, or death could be inflicted as a result thereof. The evidence was therefore sufficient to support Holmes' aggravated battery conviction.

*Failure to Brief*

We acknowledge Holmes appeals all adverse rulings in his notice of appeal. However, Holmes does not make any argument in his brief challenging his criminal threat conviction. The issue is therefore deemed waived and abandoned. *State v. Boleyn*, 297 Kan. 610, 633, 303 P.3d 680 (2013).

*BIDS fees were properly considered.*

*Standard of Review*

Whether a sentencing court complied with the requirements of K.S.A. 22-4513 is a question of statutory interpretation. Interpretation of a statute is a question of law subject to unlimited review. K.S.A. 22-4513 provides for the reimbursement of BIDS attorney

fees by convicted criminal defendants. Sentencing courts, at the time of the initial assessment of BIDS attorney fees under K.S.A. 22-4513, must consider the financial resources of the defendant and the nature of the burden payment will impose, explicitly stating on the record how those factors have been weighed in the court's decision. *Robinson*, 281 Kan. at 546.

*Discussion*

As a preliminary matter, the State argues the issue is not properly before this court on appeal. The State asserts that because Holmes failed to object to the BIDS attorney fees imposed at sentencing, the issue was not preserved for appeal. However, the State acknowledges a similar issue was considered for the first time on appeal in *Robinson*, 281 Kan. 538. Nonetheless, the State raises the issue to "[preserve] the argument." The State's argument is without merit.

In *Robinson*, our Supreme Court held a defendant need not object to the imposition of BIDS attorney fees at sentencing in order to preserve the issue for appeal. 281 Kan. at 541. This court is bound to follow Kansas Supreme Court precedent absent some indication the Supreme Court is departing from its previous position. *State v. Belone*, 51 Kan. App. 2d 179, 211, 343 P.3d 128, *rev. denied* 302 Kan. __ (September 14, 2015).

The sentencing court must expressly consider the defendant's financial resources and ability to pay fees imposed under K.S.A. 22-4513, stating explicitly on the record how those factors have been weighed in the court's decision. Without an adequate record on these points, there cannot be meaningful appellate review of the issue. *Robinson*, 281 Kan. at 546-47. Based on the statutory language of K.S.A. 22-4513(b), the sentencing court may only waive all or part of the amount due or modify the method of payment if the court has determined that payment of the amount due will impose manifest hardship on the defendant or the defendant's immediate family. Here, the district judge engaged in

a thorough inquiry of Holmes' finances, both as they stood at the time and as they appeared prospectively. The district court's order reflects the amount of BIDS attorney fees assessed was reduced from the requested amount of $2,700 to $1,000. See K.S.A. 22-4513(b).

The district court's extensive discussion of Holmes' financial resources reflects the district court fully and completely considered the impact repayment would have on Holmes and his immediate family. The district court did not err.

Affirmed.