NOT DESIGNATED FOR PUBLICATION

No. 114,711

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

LLOYD L.J. JACKSON, III,
*Appellant*.

MEMORANDUM OPINION

Appeal from Wyandotte District Court; BILL KLAPPER, judge. Opinion filed March 3, 2017. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Ethan Zipf-Sigler*, assistant district attorney, *Jerome A. Gorman*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., POWELL, J., and HEBERT, S.J.

*Per Curiam*: Lloyd L.J. Jackson, III appeals from his conviction by a jury of aggravated assault, domestic violence, and intimidation of a witness. He claims that there was insufficient evidence to convict him of aggravated assault. He also argues that the conviction for intimidation of witness must be reversed because the charging document was defective by failing to allege that he acted with the necessary intent to commit the offense.

We find that there was sufficient evidence upon which a reasonable jury could, and did, convict Jackson of aggravated assault. We further find that any error in the

1

document charging intimidation of a witness was harmless error and had no reasonable probability of affecting the outcome of the trial. Accordingly, we affirm the judgments of conviction.

*Factual and Procedural Background*

On October 6, 2014, Twanna Pankey got into a fight with her then-boyfriend, Jackson, at her apartment. At the time, Pankey was pregnant with Jackson's child. At trial, Pankey couldn't recall what the fight was about but said that it had started downstairs. She testified she had gone upstairs to deescalate the fight but that Jackson had followed her. While they were arguing upstairs, she threw her soda in his face and the two began "tussling" and taking swings at each other.

At some point, Pankey went back downstairs to again try to deescalate the situation, but Jackson again followed her and the arguing intensified. Pankey testified that Jackson had then grabbed her, pushed her down on the couch, hit her in the face a couple times, and kicked her in the stomach, which was consistent with what she told police. Pankey claimed that Jackson had then pulled out a gun that he had on his waist.

As to what happened next, Pankey's account varies somewhat. The first police officers to respond to the scene testified that Pankey told them that Jackson had pointed the gun at her, saying, "I should just shoot you." Detective Troy Rice, who arrived later, testified that Pankey told him that after Jackson pulled out the gun, he "pointed it at her legs, at her knees" and told her he was going to shoot her. In her written statement to police, Pankey claimed that Jackson said, "you [are] going to make me fucking kill you." At the preliminary hearing, Pankey testified that Jackson had never pointed the gun at her and had just put it underneath her couch. On cross-examination, the defense attorney asked Pankey whether she embellished or exaggerated the details she told police, and she responded that it was possible she had exaggerated because she was angry.

2

At trial, Pankey testified that she thought Jackson was taking the gun off to put it underneath the couch because they were still fighting. She claimed that while Jackson was pulling out the gun, he said she was lucky that he loved her. When the State and defense attorney questioned her about her testimony at the preliminary hearing, she explained that Jackson hadn't directly pointed the gun at her but pointed the gun at a downward angle toward her feet while removing it and placing it underneath the couch. She testified that she wasn't sure whether he had been intentionally pointing the gun at her while removing it, but she said she had been scared and that the comment he made while he did so made her nervous. She also testified that her written statement to police was an accurate account, that she would not lie to get Jackson in trouble, and that she could no longer remember everything that had happened.

Pankey testified that, at some point, she escaped and went outside to her porch. One of the police officers testified that Pankey had been crying and was upset when police arrived. When the detective asked Pankey how Jackson's actions made her feel, she initially replied that she was angry; the detective then asked her whether she was afraid, and she said she was. At trial, Pankey testified that she had been angry and a "little scared" and feared she would be shot. She said, "I was mad, sad, frightened, shocked that this happened, all type[s] of stuff."

Pankey also testified about calls she received from Jackson while he was in jail. She claimed that Jackson had called her and told her to tell the police that she had lied to them, told her ways to avoid getting a subpoena, and told her not to come into court. Pankey said that Jackson's calls had not influenced her behavior because she did not want to be arrested for failing to show up at court as required.

Throughout the proceedings, Pankey was reluctant to testify or be involved in the case. She refused to testify at the first preliminary hearing, claiming that she was concerned she would be charged with a crime for giving false information to the police

3

because her story had changed slightly. The district court appointed her an attorney to discuss whether she had a Fifth Amendment privilege against self-incrimination and rescheduled the hearing. At the second preliminary hearing, Pankey only testified after the State had granted her immunity so that nothing in her testimony could be used to bring criminal charges against her. Pankey reiterated at trial that she had not wanted to testify or be involved in the case.

In April 2015, the case went to trial. The jury found Jackson guilty of aggravated assault, domestic battery, and intimidation of a witness. The district court sentenced Jackson to 29 months' imprisonment for aggravated assault, 6 months in jail for domestic battery, and 6 months in jail for intimidation of a witness, all to run concurrent.

Jackson appeals to this court.

*Sufficient Evidence Supports Jackson's Conviction for Aggravated Assault*

Jackson argues that there was insufficient evidence to convict him of aggravated assault because Pankey changed her story, testified under a grant of immunity, and initially told police that she was angry rather than scared by the incident with the gun.

When a criminal defendant challenges the sufficiency of the evidence, the standard of review is whether, after reviewing all the evidence in a light most favorable to the State, the appellate court is convinced that a rational factfinder could have found the defendant guilty beyond a reasonable doubt. *State v. Belt*, 305 Kan. 381, 397, 381 P.3d 473 (2016). Appellate courts do not reweigh evidence, resolve conflicts in the evidence, or determine witness credibility. 305 Kan. at 397.

To convict a defendant of a crime, the State must prove each element of the crime beyond a reasonable doubt. *State v. Brown*, 303 Kan. 995, 1001, 368 P.3d 1101 (2016).

4

For aggravated assault, the State had to prove that Jackson had (1) knowingly placed Pankey in reasonable apprehension of immediate bodily harm (2) with a deadly weapon. See K.S.A. 2015 Supp. 21-5412(a) and (b)(1).

Pankey testified that during the altercation, Jackson pulled out a gun from his waistband, pointed it down toward her feet, and made a threatening remark to her. She also testified that she felt frightened and a "little scared." When the detective asked Pankey whether she had been afraid, she said yes, and she testified at trial that she had been scared she would get shot.

Jackson raises several arguments that the evidence was insufficient. First, Jackson argues that because Pankey's account of the events varied over time, a reasonable jury could not rely on her testimony to convict him. However, the jury heard about the variances in her testimony during cross-examination and still found her believable. See *State v. Lopez*, 299 Kan. 324, 329-30, 323 P.3d 1260 (2014) (rejecting defendant's argument that witnesses' testimony was so unreliable that a reasonable jury could not rely on it). Jackson would require this court to reassess Pankey's credibility, but this court does not make credibility determinations—the jury does. See *State v. Kettler*, 299 Kan. 448, 471-72, 325 P.3d 1075 (2014) (holding that jury has the duty to make credibility determinations and the appellate court does not reevaluate those determinations).

Second, Jackson asserts that Pankey's testimony was suspect because she was testifying under a grant of immunity and the grant of immunity did not require Pankey to be truthful. However, the jury was fully informed about the grant of immunity and was able to consider that in assessing Pankey's credibility. Moreover, it's difficult to understand how the grant of immunity would have impacted Pankey's testimony. She was offered immunity to testify at the preliminary hearing to protect herself from being charged with filing a false police report if she changed her version of the events. At trial, Pankey reaffirmed her account of the events to police and consistently testified that

5

Jackson had pulled out a gun, pointed it down toward her feet, and made a threatening remark—even if there were some differences in her testimony.

Third, Jackson questions whether Pankey was in reasonable apprehension of immediate bodily harm because she initially told police that she was angry at Jackson rather than scared. While it's true that Pankey said she was afraid only after police asked her whether she was, Pankey also testified at trial that she had been frightened, mad, and shocked at the time. She also testified that she had been scared she would be shot. A person could be both angry and afraid in such a situation. From Pankey's testimony, a reasonable jury could conclude that Pankey was in reasonable apprehension of immediate bodily harm.

Taken in the light most favorable to the State, the evidence was sufficient for a rational jury to conclude that Jackson had knowingly placed Pankey in reasonable apprehension of bodily harm with a deadly weapon.  The conviction for aggravated assault is affirmed.

*The Defective Charging Document Does Not Require Reversal*

Jackson argues that his conviction for intimidation of a witness must be reversed because the State failed to properly charge him. The State concedes that the charging document was defective but maintains the error was harmless. This court reviews challenges to charging documents independently, with no required deference to the district court's conclusion. *State v. Dunn*, 304 Kan. 773, 819, 375 P.3d 332 (2016).

Jackson did not raise this argument before the district court. Generally, a party must raise an issue before the district court to preserve it for appeal, subject to a few exceptions. 304 Kan. at 817. Jackson asserts that this court should consider his argument for the first time on appeal to serve the ends of justice and prevent a denial of

fundamental rights, one of the exceptions to the preservation rule. See *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). He argues that it would be an injustice and a denial of his fundamental rights if he were to stand convicted of a crime with which he was never properly charged. In *State v. Jacobs*, No. 113,759, 2016 WL 5867235, at *9 (Kan. App. 2016) (unpublished opinion), a panel of this court considered the merits of a challenge to a charging document raised for the first time on appeal based in serving the ends of justice and preventing a denial of fundamental rights.

K.S.A. 22-3201(b) provides that the complaint, information, or indictment is sufficient if it contains "a plain and concise written statement of the essential facts constituting the crime charged" that is "drawn in the language of the statute." A charging document is insufficient if it fails to allege "facts about the intent and action on the part of the defendant that, if proved beyond a reasonable doubt, would constitute violation of a Kansas criminal statute." *Dunn*, 304 Kan. at 815. In *Dunn*, the Kansas Supreme Court held that the charging document was insufficient to charge forgery when the count failed to allege that the defendant had intended to defraud the victim, a necessary fact to prove forgery. 304 Kan. at 820-21. The court held this was a statutory error and analyzed the error under the statutory harmless-error test. 304 Kan. at 821.

Here, Count III charging Jackson with intimidation of a witness was based on a repealed version of the statute on that offense. Count III of the Fourth Amended Information charged:

> "[B]etween the dates of October 7 and October 9, 2014, said defendant, Lloyd L.J. Jackson III, did unlawfully, knowingly and maliciously, prevent or dissuade, or attempt to prevent or dissuade, a victim or witness, to-wit: Twanna Pankey from attending or giving testimony at any civil or criminal trial, proceeding or inquiry authorized by law in violation of K.S.A. 21-3832(a)(1)."

7

The charge references and tracks the language of K.S.A. 21-3832(a)(1), but at the time Jackson allegedly committed the crime, the statute prohibiting intimidation of a witness had been amended and recodified. Under that new version, K.S.A. 2014 Supp. 21-5909(a)(1), intimidation of a witness was described as "preventing or dissuading, or attempting to prevent or dissuade" any witness or victim from attending or testifying at any civil or criminal proceeding "*with an intent to vex, annoy, harm or injure in any way another person or an intent to thwart or interfere in any manner with the orderly administration of justice*." (Emphasis added.) Count III as charged fails to allege that Jackson acted with the necessary intent, so the count fails to allege facts that, if proven beyond a reasonable doubt, would constitute a crime under Kansas law.

This court must now determine whether that error was harmless. In these circumstances, this court considers the error under the harmless-error statutes, K.S.A. 2015 Supp. 60-261 and K.S.A. 60-2105. *Dunn*, 304 Kan. at 817, 821. Under the statutory harmless-error test, the appellate court must be persuaded that there is no reasonable probability that the error affected the outcome of the trial. *State v. Ward*, 292 Kan. 541, Syl. ¶ 6, 256 P.3d 801 (2011).

The State argues that the error was harmless for several reasons. First, the State asserts that the language in Count III gave sufficient notice about what it had to prove to convict Jackson of the charge. In particular, the State argues that knowingly and maliciously dissuading or attempting to dissuade Pankey from testifying would be acting with the intent to interfere with the orderly administration of justice. Second, the State notes that Jackson and the State litigated what portions of the jailhouse calls could go before the jury at a pretrial hearing, so Jackson had notice of the conduct that the State was attempting to prove at trial, giving him adequate time to prepare a defense. Third, the State argues that any error was harmless because the jury was properly instructed on the intent element at trial and had sufficient evidence to conclude Jackson was guilty.

8

Under the procedural and factual circumstances of this case, there's no reasonable probability that the error affected the outcome of the trial. Jackson and his trial counsel understood what the State sought to prove in Count III (intimidation of a witness). See *Dunn*, 304 Kan. at 821; *State v. Rist*, No. 113,173, 2016 WL 4161309, at *10 (Kan. App. 2016) (unpublished opinion) (concluding the failure to include correct notification period in charging document did not affect the defendant's substantial rights when the defendant and his counsel clearly understood what the charge was).

The day before the trial began, Jackson submitted proposed jury instructions requesting the court include the pattern jury instruction for intimidation of a witness. The pattern jury instruction, PIK Crim. 4th 59.060, includes the necessary intent element—the intent to thwart or interfere in any manner with the orderly administration of justice. This contradicts Jackson's claim on appeal that the absence of the intent element in Count III "impaired [his] understanding of everything the State had to prove in order to obtain a conviction" and his contention that, had he known, "he might ha[ve] conducted his defense differently." The trial court gave Jackson's requested PIK instruction as Instruction No. 9. The jury was properly instructed on the charge and found Jackson guilty, and Jackson has not challenged the sufficiency of the evidence supporting the conviction. In this case, there is no reasonable probability that the error affected the outcome of the trial. We affirm Jackson's conviction for intimidation of a witness.

Affirmed.